UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| K. J.,<br>    *Plaintiff*, | )<br>)<br>) | 3:20-CV-1372 (SVN) |
| v. | )<br>) | |
| KILOLO KIJAKAZI,<br>    *Defendant*. | )<br>) | March 31, 2022 |

**MEMORANDUM OF DECISION**

Sarala V. Nagala, United States District Judge

    Plaintiff Thomasina E. brings this appeal under the Social Security Act, 42 U.S.C. § 405(g), on behalf of her minor daughter, K.J.[1] Plaintiff seeks review of a final determination by the Commissioner of Social Security ("Commissioner" or "SSA")[2] that K.J. is not disabled within the meaning of the Act and is therefore ineligible for Supplemental Security Income ("SSI") benefits. Plaintiff has moved for an order reversing SSA's decision or, in the alternative, for an order remanding the case to SSA for a new hearing. ECF No. 19. The Commissioner has moved for an order affirming the decision. ECF No. 22. For the reasons set forth below, Plaintiff's Motion (ECF No. 19) is DENIED, and Defendant's Motion (ECF No. 22) is GRANTED.

    **I.    LEGAL STANDARDS**

        A.  <u>Childhood Disability Standard</u>

    Since 1974, disabled children under the age of eighteen from families falling under an income threshold have been entitled to receive cash benefits known as SSI under Title XVI of the

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, in opinions issued in cases filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), this Court identifies and references any non-government party solely by first name and last initial and minor children by first and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] At the time that Plaintiff commenced this action, Andrew Saul was the Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and thus replaces Saul as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

Social Security Act. In order to qualify for SSI, "the child's income and assets (including those imputed from the child's parents) must fall below a specified threshold," and the "child must be 'disabled'" under the Act. *McClain v. Barnhart*, 299 F. Supp. 2d 309, 314 (S.D.N.Y. 2004).

A child under eighteen years of age is disabled under the Act if the child has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 42 U.S.C. § 423(d)(1)(A).

Determining whether a child is disabled involves a three-step analysis. First, the Administrative Law Judge ("ALJ") considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(a). Second, if the child is not so engaged, the ALJ considers whether the child has "an impairment or combination of impairments that is severe." *Id.* Third, if a severe impairment is found, the ALJ must consider (1) whether the impairment "meets, medically equals, or functionally equals" the Listings of Impairments, which are, for each major body system, the types of impairments considered severe enough to cause marked and severe functional limitations; and (2) whether the impairment meets the twelve-month duration requirement. *Id.* § 416.924(a)–(d). The claimant bears the burden of proof on all of these issues. *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999); *Brown o/b/o C.M.B. v. Colvin*, No. 13-CV-1073-JTC, 2014 WL 7272964, at *3 (W.D.N.Y. Dec. 18, 2014).

To determine whether an impairment functionally equates to the Listings under step two, the ALJ assesses the child's level of functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-

being.  20 C.F.R. § 416.926a & (b)(1).  For each domain, the Commissioner rates the degree of limitation, if any, as "less than marked," "marked," or "extreme."  20 C.F.R. § 416.926a(d) & (e); *see also McClain*, 299 F. Supp. 2d at 314.  A child is deemed disabled if she has an "extreme" limitation in one domain or "marked" limitations in two or more domains.  *Id.* § 416.926a(d).  A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities" or that is "'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i).  An "extreme" limitation is one that interferes "very seriously" with the same ability.  *Id.* § 416.926a(e)(3)(i).

If the impairment or combination of impairments meets, medically equals, or functionally equals the Listings, and meets the duration requirement, the child is disabled and eligible for SSI benefits.  20 C.F.R. § 416.924(a).  If the impairment or combination of impairments does not meet, medically equal, or functionally equal the Listings, or if it does not meet the duration requirement, the child is not disabled and is not eligible for SSI benefits.  *Id.*

   B. <u>Standard of Review</u>

In reviewing a final decision of the Commissioner, this Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)).  The reviewing court's responsibility is "always to ensure that a claim has been fairly evaluated."  *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983).

The first inquiry is whether the Commissioner applied the correct legal principles in making the determination.  *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the

3

substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Next, the Court must decide whether the SSA's determination is supported by substantial evidence. *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera*, 697 F.3d at 151 (internal quotations omitted).  The Court does not inquire as to whether the record might also support the plaintiff's claims, but only whether there is substantial evidence to support the Commissioner's decision. *See Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld."); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (ALJ's factual findings "must be given conclusive effect so long as they are supported by substantial evidence," even where the administrative record "may also adequately support contrary findings on particular issues" (internal quotation marks omitted)).  The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review—even more so than the 'clearly erroneous standard.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam).

## II. FACTUAL BACKGROUND

### A. Evidence Before the ALJ

The parties have agreed on a lengthy stipulation of facts, set forth at ECF No. 22-2 ("Stipulation" or "Stip."). The Court here summarizes the relevant facts. K.J. was born in 2010[3] and claimed an effective onset date of her disability of August 17, 2017, when she was nearly seven years old. Stip. ¶¶ 1–2. K.J.'s alleged disability stems from medical diagnoses of attention deficit hyperactivity disorder ("ADHD"), trauma and stressor-related disorders, and asthma. *Id.* ¶¶ 2, 6, 10, 14, 20, 21, 25. As noted in the Stipulation, K.J.'s ADHD is well-supported by her mother's observations and medical and educational records. *Id.* ¶¶ 2–25. K.J.'s application for disability benefits was submitted on August 17, 2017. *Id.* ¶ 1. Her application was denied initially on March 14, 2018, and again, on August 24, 2018, after reconsideration. *Id.*

The record before the ALJ consisted of a significant number of documents, including financial records, state agency decisions concerning K.J.'s level of limitation, reports from K.J.'s mother, education records, medical records, *see* ECF No. 17, Ex. 1E–22E, 1F–11F, and testimony from K.J.'s mother during a hearing that took place on June 4, 2019.[4] *See* ECF No. 17 at 35–71.[5] After the ALJ issued an adverse decision on June 26, 2019, Plaintiff appealed. Stip. ¶ 1. The Appeals Council denied her request for review. *Id.*; ECF No. 17 at 1–6.

### B. The ALJ's Decision

In a Notice of Decision dated June 26, 2019, the ALJ denied K.J.'s claim for disability benefits. The decision laid out the applicable law, which matches for all relevant purposes the

---

[3] The parties' Stipulation provides K.J.'s year of birth as 2012, *see* Stip. ¶ 2, but it appears from Plaintiff's motion and other records that her year of birth is actually 2010. ECF No. 19-1 at 3.
[4] The Court has reviewed the entirety of the record in this action and cites to representative examples of evidence in the record, where necessary, to explain its decision.
[5] Page number references to ECF No. 17 are taken from the Court Transcript Index that appears at page 2 of ECF No. 17.

three-step analysis set forth above. *See* ECF No. 17 at 13–34.  The ALJ determined at step one that K.J. had not engaged in substantial gainful activity since the application date and at step two that she "has the following severe impairments:  Attention deficit hyperactivity disorder (ADHD), Trauma and stressor-related disorders (Adjustment disorders with mixed disturbance of emotion and conduct), and Asthma (20 CFR 416.924(c))." *Id.* at 19.

The decision therefore focused on step three:  whether K.J. had an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *Id.* at 19–20.  With respect to whether K.J.'s impairments met or medically equaled the relevant listings, the ALJ summarily found that:

- Listing 103.03 for asthma was not met because the record did not evidence the requisite number or frequency of exacerbations requiring hospitalization.

- The paragraph B criteria of Listings 112.11 for neurodevelopmental disorders and 112.15 for stressor and trauma-related disorders were not met because K.J. did not have an extreme limitation in one or a marked limitation in two of the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage oneself.  The paragraph C criteria of these listings also were not met.[6]

*Id.*  The ALJ then went on to find that K.J. does not have "an impairment or combination of impairments that functionally equals the severity of the listings." *Id.* at 20–30.  It was in this portion of the analysis that the ALJ focused significant attention.

Specifically, the ALJ found evidence in the record to support the contention that K.J.'s medically determinable impairments could reasonably be expected to produce the alleged symptoms, but also found that she did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of the listings.  After first concluding

---

[6] As noted below, because K.J. does not contest the ALJ's findings for asthma and trauma- and stressor-related disorders, the Court does not address these issues.

that K.J. did not meet or medically equal the criteria of paragraph B of Listing 112.11, as noted above, the ALJ considered whether K.J.'s impairments functionally equaled the listings. The ALJ conducted a detailed analysis of the six functional domains and found that K.J. had marked limitation in attending and completing tasks; less than marked limitation in acquiring and using information, interacting and relating with others, the ability to care for herself, and health and physical well-being; and no limitation in moving about and manipulating objects. ECF No. 17 at 20–30. Based on this analysis, the ALJ found that K.J. was not disabled for purposes of receiving SSI benefits. Further details of the ALJ's opinion are described below.

### III.   DISCUSSION

Plaintiff does not contend that the ALJ's decision was based on an incorrect legal standard. Rather, she argues that the ALJ's conclusions that K.J.'s ADHD did not meet and was not medically or functionally equivalent to a listed impairment were not supported by substantial evidence in the record. ECF No. 19-1 at 7.[7] As explained above, "substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera*, 697 F.3d at 151 (internal quotations omitted). This is a "very deferential standard of review." *Brault*, 683 F.3d at 448.

#### A. Meeting or Equaling Listing 112.11

The first question before the Court is whether there was substantial evidence supporting the ALJ's decision that K.J.'s ADHD does not meet or medically equal an impairment in Listing 112.11 for neurodevelopmental disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1. The Court concludes that there was substantial evidence justifying that decision.

---

[7] Plaintiff's briefing does not appear to materially contest the ALJ's findings that her asthma and trauma-related stressors fail to render her disabled for purposes of benefits. The briefing notes that "at the very least, [K.J.'s] ADHD is listing-level," and does not further discuss the asthma or trauma-related stressor determinations. ECF No. 19-1 at 7. Thus, the Court focuses its review on the ALJ's ADHD findings.

7

Listing 112.11 requires, in relevant part:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

    1. One or both of the following:
        a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
        b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
    2. Significant difficulties learning and using academic skills; or
    3. Recurrent motor movement or vocalization.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):

    1. Understand, remember, or apply information (see 112.00E1).
    2. Interact with others (see 112.00E2).
    3. Concentrate, persist, or maintain pace (see 112.00E3).
    4. Adapt or manage oneself (see 112.00E4).

As relevant here, the ALJ found that K.J.'s ADHD did not meet the criteria of paragraph B. ECF No. 17 at 19–20.[8] The ALJ's reasoning on this point is sparse, but it appears that he applied his findings from his analysis of whether the ADHD functionally equaled the listings—using the six-domains test—to determine that the paragraph B criteria of the listing were not met because K.J. "did not have an extreme limitation in one or a marked limitation in two of the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; or adapt or manage oneself." *Id.* at 19–20.

The ALJ was not specific about which, if any, of these areas of mental functioning resulted in limitations of any degree for K.J. Plaintiff interprets the ALJ's later finding that she had a

---

[8] The Court assumes, based on the ALJ's phrasing, that the ALJ found that K.J.'s ADHD met the criteria of paragraph A of Listing 112.11. *See* ECF No. 17 at 19 ("The undersigned has considered the childhood listings 112.11 for neurodevelopmental disorders and 112.115 for stressor and trauma-related disorders. However, the paragraph B criteria of these listings are not met . . . .").

marked limitation in the functional domain of attending and completing tasks, *see* ECF No. 17 at 26, as a finding that she suffered from a marked limitation in the "concentrate, persist, or maintain pace" requirement of Listing 112.11, paragraph B3. The Commissioner does not take a specific position on this issue, but instead asks the Court to uphold the ALJ's conclusion that K.J. did not display marked limitations in any other paragraph B categories, such that Listing 112.11 was not met, even if Plaintiff's argument that K.J. suffered from a marked limitation in the "concentrate, persist, or maintain pace" requirement is accepted. *See* ECF No. 22-1 at 4. Plaintiff, on the other hand, argues that K.J. had marked impairment in both her ability to interact with others (paragraph B2) and her ability to adapt or manage herself (paragraph B3).[9] *See* ECF No. 19-1 at 8. Given the Commissioner's position, the Court will assume that the ALJ's finding that K.J. had a marked limitation in the functional domain of attending and completing tasks means that she also had a marked limitation in the "concentrate, persist, or maintain pace" criterion of Listing 112.11, paragraph B3.

The Court holds, however, that there was substantial evidence supporting the ALJ's decision that K.J. did not have a marked limitation in any other paragraph B criteria. A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities" or a limitation that is "'more than moderate' but 'less than extreme.'" 20 C.F.R. § 416.926a(e)(2)(i). First, the evidence demonstrates that K.J. did not have a marked limitation in interacting with others. The ALJ's finding was supported by the state agency decisions, conducted by "experts in child disability," which assessed that K.J. had "less than marked" limitation in this domain. ECF No. 17 at 27. These decisions acknowledged K.J. having some difficulties that seemed to have improved over time. *See id.* at 106 (noting that K.J.'s

---

[9] Plaintiff does not directly argue that K.J. had an extreme limitation in any of the paragraph B categories, though she later argues that K.J. had an extreme limitation in the domain of attending and completing tasks.

9

school social worker reported she is "well spoken, friendly, and kind," and "enjoys the social aspects of school," but could benefit from working "on empathy"), 108 (state agency decision dated March 14, 2018, noting K.J. has a history of "problem behavior attributed to impulsivity and occasional problems w/anger control.  Difficult at times, and needs prompts/guidance.  Described as friendly, but nevertheless having some problems relating"), 120–21 (state agency reconsideration decision dated August 24, 2018, noting "behavior is improved. [M]om getting fewer calls from school. [G]etting in trouble less in school. [L]ess impulsive").  The mental health and educational records relied upon by the ALJ also support his finding that, although there were more troubling behaviors exhibited initially, K.J.'s ability to interact with others at school improved over time, justifying a "less than marked" limitation finding in this area.  *See id.* at 27, 338 (second grade teacher noting K.J.'s ability to get along with her peers was "increasing" and that she was "very helpful when asked to assist with younger students"), 303 (psychiatrist noting K.J. had no tantrums or behavioral dysregulation during sessions), 416 (therapist noting K.J. was "smiling and engaging"), 510 (social worker noting that K.J. had made improvements in thinking about how other people feel).

      Plaintiff seeks to have the Court emphasize K.J.'s school disciplinary history to find a marked limitation in her ability to interact with others.  But the ALJ appropriately considered that history and noted that it improved over time through use of individualized education plans, despite persistent absences from school and an inconsistent mental health treatment regimen.  ECF No. 17 at 21–22.  Plaintiff's argument amounts to a request that the Court reweigh the evidence before the ALJ, affording more weight to the records evincing problematic interactions with others during the May to October 2017, timeframe than the later records showing improvement in this area.  But the Court is not permitted to reweigh the evidence presented to the ALJ.  *See Tanya W. v. Comm'r*

*of Soc. Sec.*, No. 3:20-CV-510 (TWD), 2021 WL 4942092, at *11 (N.D.N.Y. Oct. 22, 2021); *Dotson v. Shalala*, 1 F.3d 571, 577 (7th Cir. 1993) (a court reviewing the ALJ's decision "will not decide facts anew, reweigh evidence, or substitute [its] judgment for the Secretary's"). The Court thus cannot conclude that the ALJ's decision in this regard was unsupported by substantial evidence.

Likewise, for similar reasons, the Court agrees that the ALJ's finding that K.J. had a less than marked limitation in her ability to adapt and manage herself is supported by substantial evidence. The "adapt or manage oneself" criterion of Listing 112.11, paragraph B4, "refers to the abilities to regulate emotions, control behavior, and maintain well-being in age-appropriate activities and settings." Listing 112.00E4. Plaintiff does not separate the evidence supporting her argument for this criterion from the evidence she claims affords K.J. a marked limitation in the functional domain of interacting with others, *see* ECF No. 19-1 at 8–9. As a result, her argument here fails for the same reasons as described above. Moreover, the record before the ALJ demonstrates that K.J.'s ability to "maintain well-being in age-appropriate activities and settings," was limited to no greater degree than her ability to interact with others. Indeed, the record suggests that her limitations in this regard were less severe than the limitations on her ability to interact with others. For instance, as the ALJ recognized, her November 2018, education plan noted that she was at an age-appropriate level for activities of daily living. *See* ECF No. 17 at 484. K.J.'s mother's assessment of her daughter's daily living activities also acknowledged K.J.'s ability to conduct various self-care activities sufficiently. *Id.* at 190, 301. Substantial evidence thus supports the ALJ's conclusion that K.J. did not suffer from a marked impairment in her ability to adapt and manage herself.

For these reasons, the Court upholds the ALJ's finding that K.J.'s ADHD did not meet or medically equal Listing 112.11.

### B. Functionally Equaling a Listing

The Court also finds that the ALJ's analysis of the functional domains, which led to his finding that K.J.'s impairments did not functionally equal Listing 112.11, was supported by substantial evidence. The ALJ recognized the two-step process for considering K.J.'s symptoms: first, he had to determine that there was an underlying medically determinable physical or mental impairment that could be reasonably expected to produce K.J.'s symptoms; then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they impacted K.J.'s functional limitations. ECF No. 17 at 20. The ALJ found that K.J.'s medically determinable impairments could reasonably be expected to produce the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 21.

Specifically, the ALJ noted that, contrary to K.J.'s mother's statements, the medical records demonstrated improvement over time in K.J.'s mental status and ability to engage with treatment providers and other students at school, and a decrease in her hyperactivity. *Id.* at 21 (summarizing records). The ALJ also noted that K.J. had improved despite not having regular access to her psychotropic medication due to an unrefilled prescription and attending treatment sessions at the Yale Child Study Center only inconsistently. *Id.* He thus found her progress all the more "impressive." *Id.* The ALJ further considered the educational record, which showed notable improvement over time in both K.J.'s academics and in her ability to be "redirected" and "complete the task at hand for the most part." *See id.* at 22, 510. He then examined the relative weight of

various pieces of evidence, including the state agency assessments and the reports of the school psychologist, K.J.'s treating psychiatrist, and a certified behavior analyst—all of which he found to be persuasive. *Id.* at 23–24.  The ALJ found one earlier, less favorable report of K.J.'s social worker to be less persuasive than another later, more favorable report by the same social worker, and somewhat discredited a teacher's report because it was based on a school year that predated the onset of K.J.'s alleged disability. *Id.* at 23.  In summary, it appears that the ALJ did a careful and balanced review of all the relevant records, crediting medical assessments of K.J. and recent educational and medical records over more dated and somewhat anecdotal assessments from her mother, teachers, and social workers.

Ultimately, the ALJ found that K.J. had marked limitation in the domain of attending and completing tasks; less than marked limitation in the domains of acquiring and using information, interacting and relating with others, caring for oneself, and health and physical well-being; and no limitation in the domain of moving about and manipulating objects. *Id.* at 24–30.  Because K.J. did not have an "extreme" limitation in one domain or "marked" limitations in two or more domains, the ALJ did not find her to be disabled. *See* 20 C.F.R. § 416.926a(d).  The Court finds that this conclusion is supported by substantial evidence.

Plaintiff argues that the ALJ should have found that K.J. had an extreme limitation in the domain of attending and completing tasks and/or marked limitations in acquiring and using information and interacting with others. ECF No. 19-1 at 10–18.  The Court has already upheld the ALJ's finding that K.J. had less than marked limitation in interacting with others, so its discussion here is limited to whether two findings by the ALJ were supported by substantial evidence: (1) that K.J. had only a marked, but not extreme, limitation in attending and completing tasks; and (2) that she had a less than marked limitation in acquiring and using information.

13

Given the substantial deference the Court must afford the ALJ's decision, the Court concludes that the ALJ's finding of a marked limitation in the domain of attending and completing tasks was supported by substantial evidence. While a marked limitation interferes "seriously" with an ability, an extreme limitation interferes "very seriously" with the same ability. 20 C.F.R. § 416.926a(e)(3)(i). The ALJ's conclusion that K.J.'s limitation interferes seriously, but not very seriously, with her abilities is supported by the record. Appropriately, the ALJ acknowledged that K.J. faced significant challenges in attending and completing tasks. ECF No. 17 at 26. Plaintiff's brief cites, as support for the proposition that K.J. had an extreme limitation in attending and completing tasks, a functional behavior assessment through which a behavioral analyst observed K.J. over four days in October 2017, and four days in October 2018. That assessment found she required redirection from teachers frequently, roamed around the classroom, and was non-compliant with teachers' instructions. *Id.* at 498. But Plaintiff does not acknowledge that the records reflect an improving trajectory over time; for instance, an October 2018, report from her social worker notes that she "is easily redirected and will complete the task at hand for the most part." *Id.* at 510. Additionally, the Commissioner points out that, despite difficulties with staying on task in school, K.J. spent the majority of her time in the regular education setting. *Id.* at 255. She also had never repeated a grade level. *Id.* at 447. These facts support the ALJ's decision that K.J. suffered from a marked limitation, but not an extreme limitation, in attending and completing tasks.

Finally, the Court finds that substantial evidence supported the ALJ's conclusion that K.J. suffered from a less than marked limitation in acquiring and using information. As the ALJ noted, this domain "involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community." ECF No. 17

at 24. The ALJ's decision also provided some examples from the regulations about difficulty children could have in acquiring and using information: a child (i) may not understand words about space, size, or time; (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) does not use language appropriate for age; (v) is not developing "readiness skills" the same as peers; (vi) has difficulty comprehending written or oral directions; (vii) struggles with following simple instructions; (viii) has difficulty solving mathematics questions or computing arithmetic answers; or (ix) talks only in short, simple sentences, and has difficulty explaining what she means. *Id.* at 25. Of course, the utility of these examples in determining the level of a limitation varies with the child's age.

This is a close question but, in light of the deferential standard of review, the Court upholds the ALJ's decision. *See Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) ("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [a court] will not substitute [its] judgment for that of the Commissioner."). The ALJ heavily weighted the state agency's decisions showing less than marked limitation in this domain. These decisions support the ALJ's conclusion that K.J.'s intelligence was average. ECF No. 17 at 25, 108 (state agency decision noting "[s]uboptimal academics with grossly average intellect"; "School indicates that she is capable of better work"), 109 (noting that although "teacher reports of her ability are very negative, she scores in the Borderline range on formal assessments, with the exception of Math, which is quite poor" and that her "[i]ntellect tests are roughly average"). The ALJ then referenced formal testing that showed K.J. to have a "relative strength" in memory, and concluded that K.J.'s academic struggles were thus only "minimally related" to the domain of acquiring and using information. *Id.* at 452 (testing evaluation noting K.J.'s "performance on standardized instruments indicates she is extremely capable of processing

15

information whether it is auditory or visual"; her "overall cognitive ability was noted to be within the Average range"; and she "demonstrated relative strength in the area of associative memory skills"). As with his analysis of the prior domain, the ALJ acknowledged K.J.'s significant learning challenges, citing to educational records showing only basic abilities in most areas. *See id.* at 25. But the ALJ ultimately weighed these against the formal testing results and mental health records to conclude that K.J. had "a baseline of abilities in this domain," and, thus, a less than marked limitation. *Id.* Additionally, the facts that K.J. never repeated a grade; was making progress in reading skills over time, *see id.* at 479 (Individual Education Program review) & 338 (second grade teacher comments); and demonstrated grade-appropriate knowledge of the science and social studies curriculum, *id.* at 483, would also appear to support the conclusion that her limitation in this domain is less than marked. Thus, on balance, the Court finds that the ALJ's decision has "rational probative force," *Veino*, 312 F.3d at 586, and "must be given conclusive effect," even if the record could "also adequately support contrary findings," *Genier*, 606 F.3d at 49.

### C. Completeness of Administrative Record

Finally, Plaintiff argues that the ALJ erred in failing to obtain treatment notes from Clifford Beers, another counseling program to which K.J. was referred, and from an in-home therapist. But the administrative record demonstrates that the referral to Clifford Beers was actually denied, ECF No. 17 at 588, 595. With respect to the in-home therapist, K.J.'s attorney made no mention at the hearing before the ALJ that he was waiting on records from such a therapist; given that the attorney discussed waiting for receipt of Yale Child Study Center records (which ultimately were received), it is reasonable to assume he would also have mentioned in-home therapist records if he was waiting on the same. *See id.* at 39–40. But, in any event, further development of the record in this

regard is not required because the record as a whole supports the ALJ's decision. *See Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) ("The ALJ is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'" (alteration in original) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d. Cir. 1996)).

## IV. CONCLUSION

For the reasons described above, the Court holds that there was substantial evidence supporting the ALJ's decision that K.J. was not disabled. The Court thus DENIES Plaintiff's Motion for an Order Reversing the Decision of the Commissioner or, In the Alternative, Remanding for a Hearing (ECF No. 19), and GRANTS Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 22).

**SO ORDERED** at Hartford, Connecticut, this 31st day of March, 2022.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE